Mr. Lefebvre, unfortunately your opposing counsel was unable to attend for reasons you've been advised of. We are not going to hear oral argument in the usual course. In fact, we have a few questions for you that turn on the question of the adequacy of the pleading of fraud and what the state court actually found. So you will not please make your larger arguments but simply respond to our questions about those two areas. This will be recorded. It will be available to opposing counsel. I will give him five days to file a response and you will have three days thereafter to file something. None of these is to exceed five or six pages. Understood? Mr. Lefebvre Understood. Thank you. And I assume you'd still like to have the ability to address us rather than have the  Mr. Lefebvre Yes, Your Honor. Ms. Brewer Okay. So let's put the law aside and the Seventh Circuit opinion, but I'm not clear what it is the Superior Court actually found. You seem to be arguing that the Supreme Court found affirmatively that there was no fraud committed by the daughter. Are you making that argument? Mr. Lefebvre Judge, I think we're arguing that the issue was not addressed by the Superior Court. Clearly, Father Mr. Lawson's Superior Court found that he was basically, his dealings with this creditor were bad, no question. They were fraudulent and I think that resonates in the record. The only thing the Superior Court did relative to my client was after that judgment, which was clearly deemed to be fraudulent, the Superior Court in a post judgment proceeding in accordance with Rhode Island law brought a motion for the issuance of execution and in that pleading the sower argued that my client receiving monies was a violation of the Rhode Island version of the Uniform Fraudulent Transfer Act. That's what they allege and I believe the record supports that, but a violation of the Uniform Fraudulent Transfer Act is not the same as some type of, quote, fraudulent or misrepresentation outlined or addressed under 523 in the bankruptcy discharge proceeding. And when was this corporation established relative to these other events? My understanding, the corporation was established during, one corporation, there were a few corporations, the Superior Court would suggest that my client was the beneficiary of some benefits because of her status as a female entrepreneur and these corporations had been existent while Sower was suing Mr. Lawson and during the process they became aware of the existence of these corporations. You still haven't answered the question, were they set up shortly before Sower's sues the father? I believe, Judge, they were in existence for some period of time and there was clearly an ownership change. The Superior Court record would suggest that my client had abandoned management or ownership of the corporation in the Superior Court proceeding. Okay. You do argue that your client, that the daughter exchanged her services to the corporation, provided good value and therefore the payments to her were warranted, but I'm not quite sure where this fits in the puzzle. Isn't it possible that there was, she had knowledge that her father was fraudulently transferring this, yes, you should listen carefully, she had knowledge that the father was fraudulently transferring these monies to the corporation to defraud Sower, the creditor, and she participated in it, she may have provided value, but nonetheless she knew of his intent and helped to effectuate it. Why would the fact that she provided services defeat a possible finding of her engaging in actual fraud? And I believe that, I'll do my best to answer the question, but your prefatory comment was, is it possible? I imagine it could be possible. It is not in the record, and most importantly, Judge, under Rule 9, and especially in the bankruptcy context, when a fraud discharge ability, Rule 9 applies, none of those details and very important details were not alleged in this complaint. But it is very common in this circuit, including after the circuit makes a decision, for there to be a remand to allow for amendment of a complaint to provide the greater particulars as to the fraud alleged. Why would we foreclose that option? In this particular case, Your Honor, in the lower court, Sower did already have one opportunity to amend relative to the fraud. Their first case, the bankruptcy court dismissed the case on the 526A6 ground and specifically gave Sower the opportunity to amend. So it is not like Sower hasn't had an opportunity to amend the case, and in light of the travel of the case in the superior court, one would think that all of the facts or the possibilities, as Your Honor has referred, would have been addressed in the complaint, and they were not. Was there a later request to amend? There was one request to amend, and that's supported by the appendix, where in fact they did amend the case by the bankruptcy court, and their amendment was to amend the 523A to, quote, the actual fraud claim. And so they had one, already one bite of the apple in a transaction, admittedly, Your Honor, that was fairly lengthy in the state superior court. All sorts of dealings between dad, the creditor, and my client, particularly, and they chose, for whatever reason, not to allege anything, unlike in McClellan, where clearly, as outlined in the motion, I mean, the interesting thing in this case is that I'm not quite sure the result would be different, even if the McClellan standard were somehow adopted by the court, because in that case, there is a plethora of factual allegations that clearly resonate that the debtor and the two of them together, brother and sister, clearly tried to conspire and tried to cheat this creditor. It's those factual predicates are just silent in this case, and I think that's why the bankruptcy court correctly dismissed the case, and they also made a very, I would suggest, important concession that they concede that they cannot meet the standard Spiegel or Pomaschie relative to a misrepresentation. So they are admitting in their pleading that my client, the debtor Only if we reject McClellan. Yes, that's correct. From your point of view, we should not get into McClellan, because you say on their pleadings they haven't established they have a absolutely and also Inadequate pleadings of actual fraud. And they shouldn't be given another chance to amend, because they've already had one chance to amend. And that they've conceded that they could not, in good faith, raise a misrepresentation consistent with Fields v. Mann. And the Supreme Court decision is what we rely on substantially. All right, I'd like to ask Judge Kayada if he has any questions. Yes, I'd like to go back to Judge Lynch's first question to you, and that concerns Judge Silverstein's order of March 13, 2013, entering the execution and fraudulent transfer act. Am I correct that we should read that as a finding that your client did not convey consideration in return for the $80,000? In other words, under Rhode Island law, could Judge Silverstein have properly entered that order if there was a fortified debt due to your client for services? Well, I think based on clearly the very liberal interpretation of the Uniform Fraudulent Transfer Act, that any transfer made within the statutory period to an insider, and this was between a father and daughter. We're not arguing that this was not a, quote, fraudulent transfer under the act. But we would argue that just because a father and daughter are under the state fraudulent transfer statute, that in and of itself is not actual fraud under Fields v. Mann and the circuit court interpretation of that opinion. That was very helpful. Judge Kayada, do you have further questions? Yes, on that last answer. So are you saying that if someone is an insider under Rhode Island law, that even if they convey good value in the form of services or payments from the debtor, it would still be a fraudulent transfer? Well, I think if they actually raise a defense of fair and adequate consideration, there are many factors to determine a fraudulent conveyance. The insider relationship is just one. So I think to answer your question, yes, you have, quote, an insider relationship, but also you have fair and reasonable consideration. Hence, it might not be deemed a fraudulent conveyance under one of the prongs, but it could be found a fraudulent conveyance under one of the other prongs of the statute. And that's where you still get me confused. Under what prong of the statute could you have a fraudulent conveyance if these were bona fide payments for services rendered of comparable value? It would be helpful if the question could be repeated. It's not coming through in the courtroom quite as loudly as would help counsel. Yes. And my question is, under what prong of Rhode Island's law could these payments from CCMC to your client be deemed to be fraudulent transfers if they were paid for services of reasonable value that were conveyed by your client to CCMC? Yes, Your Honor, I understand your question. And I think just looking at subsection 5, which doesn't have any clarifications, and I'm referring to Rhode Island General Law 616-4, subsection 5 says if the transfer was all or substantially all of the assets. So in this particular case, Mr. Larson, the one asset that Sauer was chasing in the Superior Court was this lump sum of money, and that asset, which was all of the assets at the time, was transferred ultimately to my client in the form of wages. So subsection 5 would clearly fit. Also, same with subsection 6. The debtor removed the assets. Transferring is considered a removal. So I think there are many ways that a creditor could still argue a fraudulent conveyance even if there was consideration for the transfer in the form of wages and services performed. I hope I answered your question, Your Honor. Thank you. I have one more question. So your position is that the fact that it is an insider transaction in a closed corporation does not itself mean that actual fraud was committed? That is absolutely our position, and I think that's the position that Sauer took, and they may have had other grounds to get to fraud. Perhaps under the hypotheticals, they chose what I think is a tactical choice was made here, and allowing amendment would not be a good idea for exactly that reason. And I think allowing an amendment would be unfair in the context of a bankruptcy proceeding where they had one bite of the apple and there's no newly discovered evidence. This was how they chose to proceed, and they should live with their result. Okay. Thank you. Thank you, Your Honor. You can expect your opponent will be filing something in light of that presentation, and you'll have, what, three days thereafter. Is a response required? Would the court like some written response, or could we choose not to respond? You could choose not to. I don't want to run up the bills